**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **JOHN LEWIS HOGAN, III**, <br><br> Plaintiff, <br><br> v. <br><br> **HOSPITAL AUTHORITY OF VALDOSTA AND LOWNDES COUNTY, GEORGIA, d/b/a SOUTH GEORGIA MEDICAL CENTER**, <br><br> Defendant. | Civil Action No. 7:15-CV-138 (HL) |

**ORDER**

Plaintiff John Lewis Hogan, III filed a *pro se* complaint against his former employer, Defendant Hospital Authority of Valdosta and Lowndes, County, Georgia, d/b/a South Georgia Medical Center ("SGMC"), on July 16, 2015, accusing Defendant generally of race discrimination, retaliation, and failure to promote. Plaintiff subsequently retained counsel and filed his Amended Complaint (Doc. 12) on January 13, 2016.[1] In his seven count Amended Complaint, Plaintiff alleges (1) that Defendant discriminated against Plaintiff on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, 42

---

[1] On November 12, 2015, Plaintiff informed the Court that he had retained counsel and requested additional time in which to serve Defendant and to file an amended complaint. (Doc. 4). Finding that circumstances warranted granting Plaintiff an extension of time in which to serve Defendants, the Court granted Plaintiff's motion and directed that Plaintiff effect service by not later than January 12, 2016. (Doc. 6).

U.S.C. §§ 2000e, *et seq.* ("Title VII"); (2) that Defendant unlawfully retaliated against Plaintiff for exercising his protected civil rights in violation of Title VII; (3) that Defendant's conduct constitutes a pattern and practice of continuing discrimination and retaliation against Plaintiff on the basis of his race in violation of 42 U.C.S. § 1981; (4) that Defendant's conduct amounts to a violation of his constitutional right to be free from race discrimination as guaranteed by the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983; (5) that Defendant violated Plaintiff's right to due process of law and freedom from racial discrimination as defined by the Georgia Constitution; (6) that Defendant violated Plaintiff's right to employment without due process under Georgia law; and (7) that Defendant violated Plaintiff's rights under the Georgia Whistleblower Act and subjected Plaintiff to intentional infliction of emotional distress. Presently pending before the Court is Defendant's Motion to Dismiss Counts Four, Five, Six, and Seven of Plaintiff's Amended Complaint. (Doc. 14). Upon consideration, Defendant's motion is granted in part and denied in part.

I.  **FACTS**

Plaintiff is an African-American man who was employed by Defendant as a dialysis technician at the time of his termination. (Doc. 12, ¶¶ 9, 48). As a dialysis technician, Plaintiff was responsible for arriving in advance of patients' scheduled treatments to disinfect the dialysis machines and water systems and to ensure compliance with infection control policies and procedures. (Id. at ¶ 17). Plaintiff's

daily start time varied depending on the number of patients requiring dialysis treatment. (Id. at ¶ 18). Either Dr. Arunas Urbonas, the Director of the dialysis department, or one of Defendant's staffers would notify Plaintiff by text message when he should arrive for the day. (Id.).

In January 2013, Darin Melvin, a white man and Administrator of the dialysis department, transferred to Defendant's main campus, leaving the Administrator position vacant. (Id. at 21, 23). Plaintiff expressed interest in the position but was advised that the position did not exist. (Id. at ¶¶ 23-24). In March 2013, Darlene Williams, a white woman, assumed the role of Administrator of the dialysis department. (Id. at ¶ 22). Plaintiff alleges that Williams had no dialysis experience prior to becoming Administrator. (Id.).

Plaintiff contends that throughout his employment with Defendant he was denied the opportunity to advance. For example, Plaintiff alleges that as a result of the absence of a department Administrator in February 2013, Defendant failed to conduct Plaintiff's annual evaluation. (Id. at ¶ 25). Consequently, Plaintiff received no increase in his salary. (Id.). Plaintiff further avers that during his tenure with Defendant, Defendant denied him additional training while affording training to Lisa McCutchin, a white female who worked as a Registered Nurse in the dialysis department. (Id. at ¶¶ 19, 26). Additionally, Plaintiff states that he received less pay than white employees who worked a similar schedule. (Id. at ¶¶ 28-30).

In April 2013, Plaintiff informed Darlene Williams that Lisa McCutchin was not conducting a particular medical procedure pursuant to specifications set forth by the machine's manufacturer. (Id. at ¶¶ 36-37). Williams purportedly instructed Plaintiff not to question McCutchin's actions because she was a nurse and he was not. (Id. at ¶ 38). Sometime thereafter, a patient treated by McCutchin died as a result of a blood clot. (Id. at ¶ 39). Plaintiff consulted with Earl Boyett in Risk Management about McCutchin's improper technique. (Id.). The following day, Dr. Urbonas confronted Plaintiff, advising him that he should not have reported the incident involving McCutchin. (Id. at ¶ 40).

On May 10, 2013, Plaintiff received a disciplinary action report for failure to report to work on time. (Id. at ¶ 41). Defendant suspended Plaintiff for three days. (Id.). Plaintiff had never been subject to disciplinary action prior to questioning McCutchin's competency. (Id. at ¶ 32). Upon returning from his suspension, another employee allegedly reported to Plaintiff that she overheard Dr. Urbonas and Williams discussing Plaintiff's termination. (Id. at ¶ 43). Plaintiff further claims that Dr. Urbonas encouraged another dialysis technician to apply for Plaintiff's position prior to Plaintiff's termination. (Id. at ¶ 44).

After reporting McCutchin, Plaintiff alleges that McCutchin began verbally attacking Plaintiff. (Id. at ¶ 33). Plaintiff reported McCutchin's "unprofessionalism and the rudeness and verbal attacks" to his white supervisors. (Id. at ¶ 34). McCutchin was not disciplined for her conduct. (Id.). According to Plaintiff,

4

McCutchin's conduct was so offensive as to create a hostile work environment for Plaintiff. (Id. at ¶ 35). [2]

On June 5, 2013, Williams conducted Plaintiff's annual evaluation. (Id. at ¶ 45). The evaluation noted numerous deficiencies in Plaintiff's performance, including not working required hours; leaving work; failing to notify his supervisor of absences and late arrivals; inappropriate use of his cell phone; inaccurately documenting disinfection of the machines; and not maintaining the required certification. (Id. at ¶ 46). Plaintiff contends that the evaluation was based on inaccurate documentation and that Defendant's objective in listing the purported deficiencies was to disqualify Plaintiff for a merit increase and to support his eventual termination. (Id. at ¶ 47). As a result of the negative evaluation, Defendant placed Plaintiff on probation for 90 days. (Id. at ¶ 45).

Defendant terminated Plaintiff on July 19, 2013 as a result of the alleged shortcomings in his performance. (Id. at ¶ 48). Plaintiff believes that Defendant discriminated against him based on his race and claims that Defendant terminated him in retaliation for requesting a promotion, engaging in protected expression, and seeking equality in the terms and conditions of his employment. (Id. at ¶ 50). Plaintiff filed a formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 15, 2014, alleging

---

[2] Plaintiff notably has not pled a substantive count for hostile work environment.

that Defendant discriminated and retaliated against him because of his race. (Doc. 12-1).[3] The EEOC issued Plaintiff a Notice of Suit Rights on April 29, 2015. (Doc. 1-1). This lawsuit followed.

## II. MOTION TO DISMISS STANDARD

When reviewing a motion to dismiss, the court shall accept "all well-pleaded facts . . . as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271,1273 n. 1 (11th Cir. 1999). The court must dismiss the complaint if, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Executive 100, Inc. v. Martin County, 992 F.2d 1536, 1539 (11th Cir. 1991) and Bell v. Hood, 327 U.S. 678, 682 (1946)). Accordingly, to avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

---

[3] The Charge indicates that the form perfects a timely charge of discrimination filed by Plaintiff on July 31, 2013. (Doc. 12-1).

## III.   ANALYSIS

Defendant moves the Court to dismiss Counts Four, Five, Six, and Seven of Plaintiff's Amended Complaint. According to Defendant, Plaintiff has failed to plead facts sufficient to sustain any of the claims asserted in these counts. Construing the facts asserted by Plaintiff in the light most favorable to Plaintiff, the Court finds that Plaintiff has met the pleading requirements to maintain his federal law claims brought under § 1983 in Count Four of his Amended Complaint. However, Plaintiff's state law claims asserted in Counts Five, Six, and Seven must fail as a matter of law.

### A.   § 1983

In his Amended Complaint, Plaintiff asserts claims of race discrimination and disparate treatment under Title VII, § 1981, and § 1983. Defendant now moves to dismiss those claims raised by Plaintiff pursuant to § 1981 in Count Three and § 1983 in Count Four but does not challenge the sufficiency of Plaintiff's factual allegations articulated in support of his Title VII claims.[4] Because the law provides that § 1981 and § 1983 claims require the same elements of proof and are reviewed using the same analytical framework as Title

---

[4] In its opening brief in support of its motion to dismiss, Defendant moved only to dismiss Plaintiff's claims arising under § 1983. After Plaintiff responded by claiming that his § 1981 claims merged with his § 1983 claims (Doc. 18, p. 9), Defendant in reply moved to dismiss the § 1981 claims as well. However, it is clear to the Court that Plaintiff's intention is to assert his § 1981 and § 1983 claims in connection with his Title VII discrimination claims, all three of which require the same elements of proof as the Court will discuss further.

VII claims, and because the Court finds that the facts asserted by Plaintiff, taken as true, effectively set forth a claim under Title VII, the Court additionally concludes that Plaintiff has asserted sufficient facts in support of his § 1981 and § 1983 claims. Defendant's motion to dismiss Counts Three and Four of Plaintiff's Amended Complaint is accordingly denied.

To prevail under Title VII, the Plaintiff is required to plead facts "sufficient to create an inference of discrimination." Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997). Plaintiff can establish that inference by showing that "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated individual outside his protected class or was replaced by a person outside of his protected class." Thompson v. Tyson Foods, Inc., 939 F. Supp. 2d 1356, 1364 (M.D. Ga. 2013) (citing Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003)). The elements of a § 1983 claim of race discrimination are the same as the elements of a Title VII disparate treatment action. See Cross v. Alabama, 49 F.3d 1490, 1507-08 (11th Cir. 1995). Similarly, the elements of race discrimination under § 1981 are the same as a Title VII disparate treatment context. See Peterson v. BMI Refractories, 132 F.3d 1405, 1412 n. 13 (11th Cir. 1998).

An exacting standard of proof is not required at the pleadings stage in an employment discrimination case. See Surtain v. Hamlin Terrace Found., 789

8

F.3d 1239, 1246 (11th Cir. 2015) (citing Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 511 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under McDonnell Douglas also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.")). Instead, to state a cause of action under Title VII for disparate treatment, a complaint need only "'provide enough factual matter (taken as true) to suggest intentional . . . discrimination.'" Id. (quoting Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008)). A complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" but is not required to set forth "'detailed factual allegations.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555); see also Fed.R.Civ.P. 8(a)(2). The factual allegations must simply "be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

The Court finds at this stage of the litigation that Plaintiff has pled sufficient facts to support his Title VII claims and, by extension, his § 1981 and § 1983 claims. The Court, therefore, denies Defendant's motion to dismiss Counts Three and Four of Plaintiff's Amended Complaint.

### C. Due Process

In Count Five of his Amended Complaint, Plaintiff alleges that Defendant "violated Plaintiff's right to due process of law and freedom from racial discrimination as defined by the Georgia Constitution." Then in Count Six,

Plaintiff alleges that Defendant's "conduct toward Plaintiff constitutes a violation of Plaintiff's right to employment without due process under Georgia law." Plaintiff makes no substantive distinction between the two claims, which effectively are the same. Analyzing both counts under the same framework, the Court finds that Plaintiff has asserted no facts to support either claim.

The Due Process Clause of the Georgia Constitution states, "[n]o person shall be deprived of life, liberty, or property except by due process of law." Ga. Const. art. 1, § 1, ¶ I. Plaintiff contends that Defendant deprived him of his right to employment without due process of law. The law is clear that a "public employee's claims that an employer violated his or her procedural due process rights must fail unless the employee had a protected interest in his or her employment." City of St. Marys v. Brinko, 324 Ga. App. 417, 419 (2013) (citing West v. Dooly Cty. Sch. Dist., 316 Ga. App. 330 (2012).[5] State law defines whether a public employee[6] has a property interest in his job; therefore, the Court

---

[5] Plaintiff alleges generally that Defendant denied him due process of the law without specifying whether his claims arise from an alleged violation of either substantive or procedural due process. However, the law is clear that "an allegation of termination of employment, even if allegedly for improper or pretextual reasons, implicates only procedural due process concerns and does not state a substantive due process claim." Palmer v. Stewart Cty. Sch. Dist., 2005 WL 1676701, at *13 (M.D.Ga. June 17, 2005) (citing McKinney v. Pate, 20 F.3d 1550, 1556 (1994) (holding that employment rights are simply "not subject to substantive due process protection under the Due Process Clause")).

[6] Defendant, a public hospital authority, does not contest that it qualifies as a public employer and, hence, that Plaintiff is a public employee. See O.C.G.A. § 31-7-1, et seq.

10

must look to Georgia law to determine whether Plaintiff had a property interest in his job. Id.

> Under Georgia law, a public employee has a property interest in employment when that employee can be fired only for cause. In the absence of a contractual or statutory 'for cause' requirement, however, the employee serves 'at will' and may be discharged at any time for any reason or no reason, with no cause of action for wrongful termination under state law. Such 'at[-]will' employees have no legitimate claim of entitlement to continued employment and, thus, have no property interest protected by the due process clause.

Id. at 420 (quoting Wilson v. City of Sardis, 264 Ga. App. 178, 179 (2003)).

In this case, Plaintiff has presented no factual allegations establishing that Defendant employed him as anything other than an "at-will" employee. He thus cannot establish a property interest in his employment that is protected by the due process clause.

### D.  Georgia Whistleblower Act

Plaintiff's claim under the Georgia Whistleblower Act consists of the following statement: "Defendant's conduct toward Plaintiff violated Plaintiff's rights under Georgia's Whistleblower Act." (Doc. 12, ¶ 71). Georgia's Whistleblower statute provides that a public employer may not retaliate against a public employee for disclosing "a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency," or "for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the employee has reasonable cause to believe is in violation of or

11

noncompliance with a law, rule, or regulation." O.C.G.A. § 45-1-4(d)(2) and (3); Tuohy v. City of Atlanta, 331 Ga. App. 846, 848 (2015). To establish a prima facie case for retaliation under O.C.G.A. § 45-1-4(d)(2), "the employee must present evidence that (1) the employer falls under the statute's definition of 'public employer'; (2) the employee disclosed 'a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency'; (3) the employee was then discharged, suspended, demoted, or suffered some other adverse employment decision by the public employer; and (4) there is some causal connection between (2) and (3)." Forrester v. Georgia Dept. of Human Servs., 308 Ga. App. 716, 722 (2011).

Plaintiff's claims under the Whistleblower Act fail because Plaintiff has not alleged that he disclosed a violation of a law, rule, or regulation. The only factual allegations asserted by Plaintiff relating to a potential rule violation stem from his report to the Administrator of the dialysis department and later to Risk Management that a nurse in the department was not utilizing a particular machine according to the manufacturer's instructions. (Doc. 12, ¶¶ 36-37, 39). The type of rule violation or noncompliance alleged by Plaintiff does not meet the applicable statutory definition of "law, rule, or regulation." See O.C.G.A. § 45-1-4(a)(2). Section 45-1-4(a)(2) unambiguously defines "law, rule, or regulation" as including "any federal, state, or local statute or ordinance or any rule or regulation adopted according to any federal, state, or local statute or ordinance." Plaintiff

12

here has presented no factual allegations that Defendant, or any employee of Defendant, violated any local, state, or federal statute or regulation. Rather, his claim essentially is that a co-worker neglected to follow operational instructions for a particular device utilized in the dialysis department. Plaintiff accordingly has failed to state factual allegations sufficient to maintain a claim under the Whistleblower Act. See Brathwaite v. Fulton-DeKalb Hosp. Auth., 317 Ga. App. 111, 114-15 (2012) (affirming summary judgment where plaintiff expressed concern that a coworker embezzled funds from a former employer and did not complain that there was a violation or noncompliance with a particular law or regulation); Edmonds v. Bd. of Regents, 302 Ga. App. 1, 6-7 (2009) (affirming summary judgment where plaintiff only raised safety concerns and presented no evidence of a violation of one or more laws, rules, or regulations). Plaintiff's claims asserted under the Act are therefore dismissed.

### E.    Intentional Infliction of Emotional Distress

Finally, defendant moves to dismiss Plaintiff's claim that Defendant subjected him to the intentional infliction of emotional distress. To recover on an intentional infliction of emotional distress claim, a plaintiff must show that "(1) defendants' conduct was intentional or reckless; (2) defendants' conduct was extreme and outrageous; (3) a causal connection existed between the wrongful conduct and the emotional distress; and (4) the emotional harm was severe. Abdul-Malik v. AirTran Airways, Inc., 297 Ga. App. 852, 856 (2009). Georgia law

in general does not recognize termination as rising to the level of intentional infliction of emotional distress. Beck v. Interstate Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992) (Georgia is an at-will employment state and does not recognize wrongful discharge of at-will employees); see also Phillips v. Pacific & S. Co., 215 Ga. App. 513, 515 (1994) (discharge for whatever reason, "without more, gives rise to no claim for the intentional infliction of emotional distress"). "Even if the employee is not terminable at will, discharge for an improper reason does not constitute the egregious kind of conduct on which a claim of intentional infliction of emotional distress can be based." Id. Because Plaintiff's intentional infliction of emotional distress claim is premised on the fact that Defendant terminated Plaintiff and because Plaintiff has not otherwise pled facts giving rise to an intentional infliction of emotional distress claim, Plaintiff's claim fails as a matter of law and is dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendant's Motion to Dismiss. (Doc. 14). Counts Five, Six, and Seven of Plaintiff's Amended Complaint are dismissed. Plaintiff's remaining claims shall proceed for further factual development.

**SO ORDERED** this 13th day of June, 2016.

*s/ Hugh Lawson*
aks                                        **HUGH LAWSON, SENIOR JUDGE**